## 59186. SANDERS v. STEWART et al.

McMURRAY, Presiding Judge.
Sometime in the spring of 1977 Larry Stewart responded to an advertisement by James E. Sanders, Jr., a self-styled business broker and consultant, relative to the sale, by and through the broker, of a small grocery store located in Chestnut Mountain and known as Chestnut Mountain Shopette. The store was owned by one Alfred Hewett who leased the real property from another. During the process of negotiations the First National

Bank of DeKalb County foreclosed on the store, and Hewett went into bankruptcy.

Eventually, a sale was consummated with Stewart in which the store, allegedly containing certain inventory and equipment, was purchased with a down payment of $4,000 to the bank, supposedly the holder of the first lien, and Stewart executed on June 29, 1977, a promissory note in the amount of $3,000 to Sanders with interest from maturity until paid in full at 9% per annum, repayable in 36 equal monthly installments of principal and interest in the amount of $95.45 each, beginning the first day of August, 1977, and continuing on the first day of each month thereafter until paid in full. Simultaneously therewith an agreement was executed in favor of Sanders with reference to the inventory as well as "all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith." A financing statement was also executed as to all equipment of the debtor and "all accessories, parts and equipment" and all inventory now or hereafter acquired. A lease of the premises was also executed with the landlord for a period of five years but with a special stipulation therein that the premises were leased "exclusive of equipment *which may be owned by landlord,* inventory attached and marked Exhibit 'A'." (Emphasis supplied.) A dispute arose as to the ownership of the equipment. The bank admitted it did not own the two milk coolers. An ice cream box was claimed by another and all other equipment was claimed by the landlord. Stewart never received clear title to any equipment.

Stewart operated the store for a number of months, ultimately losing the two milk coolers which were picked up under court order. Two payments were made on the note to Sanders, and Stewart refused thereafter to pay further, contending there was no certainty as to what equipment he had purchased.

On February 15, 1978, Sanders brought a foreclosure of personal property action against Stewart, attaching thereto the security agreement and notification by letter from an attorney with reference to acceleration of the note and the intent to seek attorney fees as well as the amount of the note. Stewart, as defendant, filed an affidavit of

illegality, setting forth the various negotiations toward the purchase of certain inventory and equipment of the Chestnut Mountain Shopette, as well as the alleged representations by the plaintiff made during the negotiations that such inventory and equipment were pledged as security to the First National Bank of DeKalb County, the borrower had defaulted and gone into bankruptcy, and the court had awarded all equipment to the bank. Defendant contended that the plaintiff was a broker for the bank to sell such equipment and inventory, and had advised him the lien of the bank was the only encumbrance on said equipment and inventory, all other claims having been disposed of by the bankruptcy proceedings. He alleged that he executed the note and security agreement believing the plaintiff's representations to be truthful. Affiant further stated in the affidavit that subsequent to the execution of the note and security agreement and making payments as provided therein, certain creditors of the original owner of the equipment came forth to repossess said equipment, and he alleges that the representations made by the plaintiff were fraudulent and for the purpose of inducing him to enter into a sales agreement with plaintiff and further that the contract between plaintiff and affiant is unenforceable due to a total failure of consideration. Defendant also filed a counterclaim contending that he had paid two monthly installments and had contractually committed himself to pay the sum of $3,420 based upon the fraudulent representations by the plaintiff made for the purpose of inducing him to enter into a contract with plaintiff and sought damages in the sum of $190, punitive damages in the sum of $10,000 and $500 attorney fees. Defendant also executed a bond as principal with one Paul J. Miller as security in the sum of $2,500, the obligation conditioned upon the return of certain personal property claimed by the plaintiff when called for by the levying officer upon the foreclosure of a certain lien executed by the defendant to the plaintiff. Thereafter, plaintiff amended his complaint to add Paul J. Miller as a party defendant alleging that defendant Stewart closed the Chestnut Mountain Shopette, sold or otherwise disposed of all of said inventory so that said inventory

cannot be delivered as provided in said bond and also alleged that the defendant Stewart is insolvent.

The case proceeded to trial, and the jury returned a verdict in favor of the defendants. The judgment followed the verdict, and the plaintiff appeals. *Held:*

1. The evidence here was in conflict as to whether or not the plaintiff was the agent (broker) for the bank, the defendant (Stewart), or both, or merely an independent broker representing only his own interest; and also as to whether the plaintiff had been employed as a consultant to advise defendant as claimed with reference to the purchase of the grocery store. The evidence is also in conflict as to what the defendant had purchased and what he was to pay for the goods and as to who actually owned the alleged goods he wanted to purchase (inventory and/or equipment). There is also conflict as to whether or not he indeed purchased any equipment, although he claims he paid $4,000 for the inventory and was to pay $14,000 for the equipment and did pay the $3,000 note as partial payment for the equipment, the commission payable to Sanders by the bank. Defendant did operate the store for some months selling most of the inventory and taking the remainder (approximately "$300 or $400") with him when he closed the store on August 1, 1978.

We are concerned here as to whether or not there was fraud in the inducement and also a want or failure of consideration as to what defendant received in executing the note and security instruments in favor of the plaintiff. In the execution of a note, the law presumes a consideration, and the burden is on the maker to prove want or failure of consideration. *Broughton v. Joseph Lazarus Co.*, 13 Ga. App. 153(1) (78 SE 1024); *Wenke v. Norton,* 120 Ga. App. 70, 72 (169 SE2d 663).

A payee may be a holder in due course but must take the instrument "for value; . . . and in good faith." See Code Ann. § 109A-3—302 (Ga. L. 1962, pp. 156, 252). Consequently, if defendant proves a failure or want of consideration or fraud in the inducement of the instruments, then the jury could determine the question as to whether the evidence overcame any presumption in favor of the validity of the instruments. Plaintiff allegedly received the note as payee with notice of the defenses

claimed by the defendant. See *James Pair, Inc. v. Gentry,* 134 Ga. App. 734 (215 SE2d 707). But, according to defendant's (Stewart's) testimony, plaintiff advised him that the bank would receive the equipment and inventory which was sold to him. As far as the evidence discloses, this did not occur. Defendant testified that the $3,000 note was in partial payment of the purchase price of the equipment ($14,000 less $3,000 commission) and that he would pay the bank the balance. Based upon the evidence, the jury was authorized to find a total failure of consideration, that is, that the defendant received no clear title to any equipment which was either owned or claimed by others or the landlord. The trial court did not err in refusing to direct a verdict in favor of the plaintiff for any amount sought as the evidence did not demand such a finding although it may have authorized same.

2. No verdict and judgment were found in favor of the defendant Stewart as to his counterclaim for damages for fraud, which claim was withdrawn from the jury by the trial court, and only the return of the payments under the note was allowed to be considered by the jury. The jury merely found in favor of the defendants (Stewart and Miller), and there was no finding of liability against the plaintiff. Hence, no ruling on any issue going solely to the measure of damages will be considered on review. *Foy v. Edwards,* 118 Ga. App. 665 (2, 5), 668 (165 SE2d 176); *Christiansen v. Robertson,* 139 Ga. App. 423 (1), 424 (228 SE2d 350), reversed on other grounds in 237 Ga. 711 (229 SE2d 472). See also 140 Ga. App. 725 (231 SE2d 828). No harmful error is shown by the charge that certain facts, "if proved to your satisfaction, would entitle the defendant to actual damages." Nor would the other charges as to fraud as to defendant's (Stewart's) counterclaim be erroneous inasmuch as no judgment was awarded to the defendant except in defense of the action.

3. If, in fact, the jury believed that the plaintiff was the agent of the bank and the bank had no authority to sell the equipment, the trial court did not err in charging the jury that "no right shall arise to either party out of an agency created for an illegal purpose." The evidence authorized this charge.

4. Objection was made to the charge on constructive

fraud, which was contained in a definition as to actual and constructive fraud, that there was no fiduciary relation between the parties, defendant (Stewart) claiming the plaintiff was the agent-broker of the bank. However, there was conflicting evidence as to exactly whom the plaintiff represented as agent-broker, the plaintiff, the defendant, or both, or whether he was the employee of the defendant as consultant or was simply representing himself as an independent contractor, broker-consultant. Under the circumstances, a charge on constructive fraud was not subject to objection made that under the defendant's (Stewart's) theory of the case there was no fiduciary relationship existing between plaintiff and defendant which would authorize the charge. There is no merit in this complaint. See in this connection such cases as *Reese v. Wyman,* 9 Ga. 430 (5, 6, 7), 439-440; *Coffee v. Newsom,* 2 Ga. 442; *Elsner v. Cathcart Cartage Co.,* 124 Ga. App. 615 (1) (184 SE2d 685); *Gilreath v. Argo,* 135 Ga. App. 849, 851 (3) (219 SE2d 461).

5. The court gave a charge on good faith of a party in making a false representation in that this information was not available to him even though the opposite party believed he was acting in good faith and did not intend to deceive, if he did, in fact, so deceive. The charge was taken from *Smith v. Newton,* 59 Ga. 113, 120. The exception was that to give it would make it "redundant" and "the same matter has already been covered in an earlier charge." Now plaintiff claims error in giving this charge and in not giving a charge requested as to the five elements of fraud and deceit in Georgia as disclosed by several cases from which this written request was derived. As to the excerpt as given, the objection now is not the same as that made in the trial court. Hence, we do not consider it further. *Johnson v. Heifler,* 141 Ga. App. 460, 461 (233 SE2d 853); *Allen v. Jentzen,* 141 Ga. App. 548, 550 (234 SE2d 136); *Abrams v. State,* 223 Ga. 216 (9), 225 (154 SE2d 443).

As to the enumeration of error that the trial court improperly charged the element of scienter as a necessary element of the plaintiff's alleged fraud, as found in the written request, the court fully charged thereon in other portions of its charge. There is no merit in this complaint.

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED JANUARY 16, 1980 — DECIDED FEBRUARY 19, 1980 — REHEARING DENIED MARCH 11, 1980 —

*Furman Smith, Jr.,* for appellant.