No. 64.—WILLIAM L. WILLIAMS, plaintiff in error *vs*. THE STATE OF GEORGIA, defendant in error.

[1.] It is a good cause of challenge to a juror, by the State, in a capital case, if on being sworn on his *voire dire* he declares that he has conscientious scruples against the infliction of capital punishment.

[2.] The proper time for challenging, is between the appearance and swearing of the jurors.

[3.] It is irregular and improper to ask any other questions of a juror, than those authorized by the statute, with a view of ascertaining whether he is objectionable *for favour*.

[4.] A bias or prejudice against crime, is not such as will constitute a good challenge for cause.

Indictment and conviction for murder. From Richmond Superior Court. Tried before Judge HOLT. June Term, 1847.

This cause was tried upon a plea of not guilty.

After the arraignment was made and the usual preliminary steps taken, a panel of forty-eight jurors was presented to the prisoner, and several jurors were selected and sworn to try the cause, when John Barnes, one of the panel was called, and by the State's attorney put upon the prisoner, who required him to be sworn upon his *voire dire*, and examined touching his competency; and having answered both questions prescribed by the statute negatively,

voluntarily stated that he had *conscientious scruples* concerning the infliction of capital punishment, whereupon the Court below permitted the State's attorney to pass said juror upon a challenge for cause, to which the prisoner's counsel objected, insisting that the scruples so avowed by the juror, constituted no sufficient ground of challenge for cause, and that the State's attorney could not legally object to said juror, after having offered him to the prisoner.

In the further progress of the selection of the jury, Shade S. Pardue, another of said panel, having been called, was by the State's attorney sworn upon his *voire dire* and examined touching his competency, and having answered the questions prescribed by statute negatively, was asked by the State's attorney whether or not he entertained conscientious scruples concerning the infliction of capital punishment; to which he replied that he did, before the defendant's counsel had time to object to the question; whereupon the State's attorney moved that said juror be passed upon a challenge for cause, the prisoner's counsel objecting both to the question and the alleged challenge for cause; when the State's attorney withdrew the question. The Court below held that the question was illegal, but nevertheless allowed the challenge for cause, the disclosure having been made.

And in the further progress of selecting the jury, Solomon L. Bassford, another of said panel, was called and put upon the prisoner by the State's attorney, who required him to be put upon his *voire dire* and examined touching his competency. The juror having answered the first question prescribed by the statute negatively, to the second question, "Have you resting on your mind any bias or prejudice for or against the prisoner at the bar ?" he responded, "I fear I have;" when the presiding judge below propounded the further question, "Mr. Juror, is your bias or prejudice against the prisoner, or the crime ?" To which the prisoner's counsel objected, as unauthorized by law, but the Court overruled the objection, and the juror answering that his prejudice was against the crime, was put upon the prisoner.

To which several rulings and decisions of the Court below, the counsel for the prisoner excepted, and assigned the same for error.

MILLER & JENKINS, for the prisoner.

FLOURNOY, Attorney General, for the State.

Williams *vs.* The State.

MILLER & JENKINS, for the prisoner, made the following points:

That there was error in this, to wit, that the Court decided that the State's attorney was entitled to challenge for cause, a juror, who, after having been put upon the prisoner by the State's attorney, voluntarily stated that he entertained conscientious scruples concerning the infliction of capital punishments.

And further, there is also error in this, that the Court decided that the State's attorney was entitled to challenge for cause another juror, who stated that he had scruples in regard to the infliction of capital punishments, in answer to a question propounded to him by the State's attorney on his *voire dire*, additional to the questions prescribed by the statute in such cases provided.

And further, there is also error in this, that another juror having been examined on his *voire dire*, in manner and form prescribed by the statute in such cases made and provided, and not having answered the questions in such manner as to establish his competency, his honour, the judge, propounded to him a question not prescribed or authorized by said statute, and, upon his answer thereto, adjudged him competent.

And further, there is also error in this, to wit, that two of said jurors, to wit, John Barnes and Shade S. Pardue, having been put upon their *voire dire*, and having answered the questions prescribed by the statute in such manner as to make them competent, the court, for other causes, adjudged them incompetent, and permitted the State's attorney to challenge them for cause, without the intervention of triors.

And cited the following authorities: 1 *Coke on Litt.* 157, *a*; *ib.* 157, *b*; 1 *Kelly R.* 571; *Hotchk.* 798.

*By the Court.*—LUMPKIN, J., delivering the opinion.

This is a writ of error to a judgment of the Superior Court of Richmond county, whereby the plaintiff in error was convicted of murder.

When the *venire* in this case was called, John Barnes, one of them, was put upon the prisoner, who required him to be sworn upon his *voire dire*. He answered both questions prescribed by the statute negatively, and then voluntarily added, that he had conscientious scruples against the infliction of capital punishment; whereupon the Court permitted the Attorney General to challenge said juror for cause, the prisoner's counsel objecting

thereto, and insisting that the juror was competent, notwithstand-standing said answer; and furthermore, that even admitting that the disclosure which he had made as to the state of his mind disqualified him, still the objection came too late.   Shade S. Pardue being called, was examined upon his *voire dire*, touching his competency, and after answering both of the interrogatories propounded by the act of 1843 in the negative, he was inquired of by the Attorney General, whether or not he entertained conscientious scruples as to the infliction of capital punishment.   He replied that he did, before the prisoner's counsel had time to object to the question.   It was moved in behalf of the prosecution, to pass him upon a challenge for cause, and this was allowed by the Court, although it was conceded that the inquiry had been irregularly made.

Solomon L. Bassford, another of said panel, being sworn upon his *voire dire* at the instance of the prisoner, stated that, " he feared he had some bias or prejudice on his mind."   The Court asked the juror whether it was against the prisoner or the crime; he answered against the crime, and he was thereupon pronounced qualified.

To all which decisions of the Court below, counsel for the accused excepted.

[1.]    The point to be first settled is, whether or not a juror who states upon oath, that he is conscientiously opposed to the infliction of capital punishment, is competent to sit in a case of murder. If he is, the Court below erred in rejecting two jurors on that ground, and it is wholly unnecessary to inquire at what stage the objections occurred.

No adjudicated case has been produced from England, and it is urged that the very fact that there is no instance of such a challenge in the books, is conclusive against it; whether this inference is rebutted and this silence sufficiently explained by referring to the statute of 7th and 8th William III, ch. 21, as having obviated all question on the subject in England, by disabling Quakers from serving on juries, I will not undertake to say.

The question has been repeatedly made in the State and United States Courts, and so far as I am informed, been uniformly decided against the competency of the juror.

In *The United States* vs. *Cornell*, 2 *Mason R.* 91, Mr. Justice Story says : " To compel a juror to sit in such a case, is to compel him to decide against his conscience or to commit a solemn

Williams *vs*. The State.

perjury.  Each of these alternatives is equally repugnant to the principles of justice and common sense.  To insist on a juror's sitting in a cause when he acknowledges himself to be under influences—no matter whether they arise from interest, from prejudices, or from religious opinions—which would prevent him from giving a true verdict according to law and evidence, would be to subvert the objects of a trial by jury, and to bring into disgrace and contempt the proceedings of courts of justice.  We do not sit here to procure the verdicts of partial or prejudiced men, but of men honest and indifferent in causes.  This is the administration of justice which the law requires of us, and I am not bold enough to introduce a practice which corrupts the very sources of justice."

In *The United States* vs. *Wilson et al.*, 1 *Bald. R.* 83, Coates, one of the jurors, being called, stated that he had conscientious scruples against giving a verdict which in its consequences might be the means of taking away the life of the prisoner; whereupon Mr. Dallas challenged him for this cause.

*By the Court.*—" If the juror should act according to his declaration, his conscientious scruples would prevent him from deciding according to the evidence and his solemn affirmation.  *We should hold it a good cause of challenge if the question remained unsettled.* The challenge is allowed."

In *The People* vs. *Damon*, 13 *Wend. R.* 355, Chief Justice Savage says, " Such a person is unfit; he has prejudged the question; he has made up his verdict without hearing the evidence, and ought to be excluded upon common law principles.  It would be a solemn mockery to go through the forms of a trial with such a jury, or even one such juror.  *The prisoner is sure to be acquitted, independent of the question of guilt or innocence.  It would be a misnomer to call such a proceeding a trial.*"

The Supreme Court of Pennsylvania, in *The Commonwealth* vs. *Lesher,* 17 *Serg. & Rawle R.* 160, say:  " Nor, in our opinion, ought any thing short of positive authority induce us to commence a practice fraught with so much danger of corruption, in criminal trials, as the putting of twelve men upon their oaths and solemn affirmations, some of them bound by their oaths and by the law to say the truth according to the evidence, and the rest of them bound as strongly by their conscience to deny the truth, with firmness and obstinacy just in proportion to the atrocity of the facts in proof; so that the more aggravated the murder, so much more intense must be the struggle between conscience for the law and conscience

against the law. One thing only is certain; let the verdict in any such case be as it may, it involves a consequence which need not be named."

It is true that Chief Justice Gibson dissented from the opinion just quoted, and assigned cogent reasons for so doing; still I must say, that after examining them carefully, they have failed to convince me that the majority erred.

If it were proposed to allow a juror *to challenge himself*, or in other words to excuse *himself* from the performance of this or any other duty, on account of real or pretended scruples, felt or feigned, the argument of the Chief Justice would be entitled to great consideration; for, the precedent being once set, the knave and the infidel, as well as the honest man and the christian, would seek protection under it. Indeed, no one can pretend to assign limits to the mischiefs that would ensue. Witnesses would refuse to testify, and militia-men to muster.

On the contrary, we hold that every man is bound to do his *whole duty* to the government which protects him, in every situation in which he may be placed in life. Hence, it has been often ruled, that a juror has no right to challenge himself; and though a good cause of challenge subsists, yet if neither party will take advantage of it, the Court cannot reject him. *Bickham* vs. *Bissant, Coxe R.* 220.

Without citing other cases in support of the principle under discussion, we are of opinion, in the language of the tribunal last referred to, that the scruples of a juror, whether real or not, (for into their genuineness no human tribunal can easily inquire,) amounting to a pre-determination to condemn or acquit a prisoner, disregarding the evidence or disregarding the law, if declared by the juror or otherwise made known, form a legal ground of principal challenge; and if either side thinks fit to challenge for that reason, the cause is sufficient.

And this conclusion rests upon principle. Does a juror who cannot conscientiously convict a man of murder, stand *indifferent* as he stands *unsworn?* is he, in the language of Lord Coke, *liber homo?*—that is, not only free from all bodily bonds, but likewise from all mental impediment? is he above *all* exception? will he impartially hear and examine, and acquit the innocent, and *convict the guilty?* will he faithfully carry into effect the true objects of the trial by jury? We think not.

[2.] Next, as to the time when the objections were made. The

Williams *vs.* The State.

practice in England and in this State is, for the State first to make her challenges. Still, we maintain that the Court committed no error in permitting the prosecuting attorney to challenge a juror for cause, at any time before he was sworn.

In *The People* vs. *Damon*, the Court held, that if it was made to appear, *even after a juror was sworn,* that he was totally incompetent by reason of having pre-judged the case, that it was not too late to set him aside and call another. The rule, however, as stated by Hawkins and other standard writers on criminal law, is, that no juror can be challenged by either side without consent, after he has been sworn, unless it be for some cause which happened since he was sworn. 1 *Coke Inst. book* 3, *ch.* 9 ; 2 *Hawkins Pl. Cro.* 568 ; *Yelv. R.* 24 ; 1 *Chitty Crim. Law* 545. This last author maintains that the proper time for challenging is between the *appearance* and the *swearing* of the jurors. *ib.* And this we take to be the true doctrine.

In *Beauchamp* vs. *The State*, 6 *Blackf. R.* 307, one of the exceptions was, that the State was allowed peremptorily to challenge a juror after he was accepted by the prisoner ; and the Supreme Court affirmed the judgment, laying down the rule, that " either party may challenge at any time between the appearance and swearing of the jury."

To the same effect is the decision in *Hooker* vs. *The State of Ohio*, 4 *Ham. R.* 350. The Court say, " For these reasons the law has wisely provided, that the right of the peremptory challenge ought to be held open for the latest possible period, to wit, *up to the actual swearing of the jury.*"

As to the remaining ground of error, namely, that the Court [3.] propounded to one of the jurors a question not authorized by the code, for the purpose of ascertaining the nature of his *bias*, we are clear that this practice is irregular. The law allows but two questions to be asked the juror by the Court, to test his *indifference ;* if either be answered *affirmatively*, the judgment of law is, that there is express favour or express malice, and it is good cause of principal challenge ; if both answers be *negative*, and either side would show cause of favour, it must be left to the conscience and discretion of triors, to find him favourable or not.

Inasmuch, however, as the juror showed himself indifferent [4.] between the State and the defendant, by his answer, while we repudiate the course pursued, we cannot reverse the judgment which declared him competent.

*Davis* vs. *Hunter*, 7 *Ala. R.* 135, is a precedent in point, if indeed authority were wanting to establish so plain a proposition, that a bias or prejudice against crime constitutes no cause of challenge; if it did, it would be impossible to procure a jury in any case whatever. I can imagine a case where the individual would be so identified with the act, that a bias against the particular transaction, would amount to a prejudice against the person of the party; but here the idea seems to be, that the juror had no more repugnance to this act of violence, than to all others of a similar nature; in other words, it was hostility to homicide in general.

God forbid that I should withhold from a prisoner, situated as this unfortunate man is, one jot or tittle of his legal rights. He is entitled to the whole of them, to the last hair's breadth, and *he shall have them.* Courts of justice as well as jurors, are bound to give to the accused even the benefit of their doubts; in this case we have none; and as the appeal can only address itself to our feelings as men, the only response it can receive, is that given by *Sir Matthew Hale* when importuned unseasonably for mercy, "I must have mercy on the country." In such cases we are but the ministers of the law—her decrees constitute our justice.

Judgment affirmed.