## BOHANAN *v.* THE STATE.

1. On the trial of an indictment for a misdemeanor, a witness for the State having testified to a confession by the accused, and having detailed the circumstances under which it was made, which circumstances consisted of detecting him in the criminal act, of a consequent threat to prosecute, and an attempt by the accused to bribe him not to prosecute, and the confession having then been repeated in the presence and hearing of another witness, the subsequent testimony of the first witness that he extorted the confession, should, in the absence of all further explanation, and

when there was no motion made to withdraw the confession from
the jury, be interpreted as a mere conclusion of the witness's mind
upon the legal effect of the circumstances which he had before
detailed under which the confession was made. These circum-
stances were not sufficient to render the confession incompetent
as evidence to be considered by the jury.

2. The evidence warranted the verdict, and the motion for a new
trial was properly denied.

March 14, 1893.

Liquor-selling.     Before Judge HARRIS.     Carroll su-
perior court.     October term, 1892.

Dick Bohanan was indicted for selling and furnishing
liquor within the 714th district G. M., Carroll county.
He was found guilty, and his motion on the general
grounds for a new trial was overruled.    At the trial
Perdue testified:  About May 1, 1891, he was in the
stables in Stewart's warehouse yard in Carrollton, and
defendant came into an apartment of the stables and
handed one Austin two bottles.    Austin ran his hand in
his pocket, and taking it out extended it towards defend-
ant.    Austin came out and went off, and witness ap-
proached defendant and said to him :  "Dick, this is
a nice trick of yours, selling liquor here in this town.
I shall prosecute you."    Defendant admitted selling
liquor to Austin there.    Witness came off, and had
got near the court-house when defendant came to him
and begged him not to prosecute him, that he had sold
Austin some whisky, and if witness would not prosecute
him he would not do such a thing again.    Witness did
not give him any satisfactory reply, when defendant
said that he would give witness $5 if witness would say
nothing about it and not prosecute him.    Witness walked
off towards Stewart's store, and defendant followed
begging him not to prosecute defendant, that he would
want defendant to get him (witness) some whisky some
time.    Witness replied that he would not want defend-
ant to get him any whisky.    By this time they had got
to where Stewart and Tumlin were, at or near the store,

and defendant there, in their presence, offered witness
$5 not to prosecute him. —Tumlin testified: In the
summer of 1891, Perdue and defendant approached wit-
ness and Stewart, and were talking about defendant
selling whisky to Austin. Defendant was begging
Perdue not to prosecute him for it, and offered Perdue
$5 if he would not prosecute him. Defendant admitted
that he had sold it. The admission was freely and vol-
untarily made. No threats or inducements were used
to induce the confession.

Defendant stated: He was not guilty of furnishing
Austin or any one with whisky anywhere. About the
time testified to by Perdue he did bring Austin some
whisky. Austin called defendant to him and told him
to go to Austin's house and get him a bottle of whisky.
He went and got the whiskey where Austin told him to
go and get it. Austin told him to go to his (Austin's)
barn and he would find a jug of liquor there, and to fill
him up a bottle, or perhaps two bottles, and bring to him;
and defendant did so and gave them to Austin in the
stables. As soon as Austin left, Perdue came up to defend-
ant and in a very excited manner accused him of selling
liquor there. He told Perdue he was mistaken, that he
had not sold or furnished any one with liquor; where-
upon Perdue picked up a rock and drew it back as
though he was going to throw it, and cursed defendant,
telling defendant he should not dispute his (Perdue's)
word, that he knew defendant did furnish Austin with
whisky just a little bit ago, and if defendant disputed
it, Perdue would knock him down with a rock, that de-
fendant had to own it up or Perdue would down him
right there. —Austin testified: In the spring or summer
of 1891, he had some whisky in his barn, and sent de-
fendant after some of it. Defendant brought him some
of it in bottles two or three times. Witness did not
recollect about this particular time. He probably may

have met defendant at the stables in question and received the whisky from defendant there, as he often went there, and defendant may have seen him go in there and he brought the whisky and delivered it to witness down there in the stables. Defendant usually brought it into witness's office. Witness got defendant at other times to go and get him whisky, always giving defendant the money before sending him off.

Perdue, reintroduced, testified: It was not true that he cursed defendant and threatened to knock him down if he did not own up to selling whisky. He had never cursed in his life. He was of an excitable nature and tolerably easy to make mad, and when mad he could recollect everything he would say and do. He did extort the confession.

G. W. AUSTIN and COBB & BROTHER, by brief, for plaintiff in error. T. A. ATKINSON, solicitor-general, by REID & STEWART, contra.

BLECKLEY, Chief Justice.

1. After the witness stated as a part of his testimony that he extorted the confession, there was no motion made to withdraw from the jury the confession or the testimony which the same witness had previously given concerning it. At the time this previous testimony was received, it appeared to be legal, for nothing was then or had been disclosed which could suggest that the confession was not freely and voluntarily made. On the contrary, it was shown that the accused had repeated it in the presence and hearing of another witness, thus confessing twice, once to the person who had threatened to prosecute him, and again to that person and the other witness, these two being together when the confession was repeated. Is it erroneous to allow evidence to remain before the jury when no reason for excluding it appeared until after it was received, and no motion to withdraw it is made at any time? Must the court,

without any request from the accused or his counsel,
withdraw evidence which has been legally admitted, if
subsequent testimony discloses that it was incompetent?
But should this confession have been withdrawn, even
on motion, because the witness said he extorted it? We
think not. The witness had previously detailed what
he said and did. He detected the accused in the act,
threatened to prosecute him, and rejected a bribe which
the accused offered him to induce him not to prosecute.
Was there any extortion in this? Surely not. There
was no invitation to confess, no threat to prosecute if
he did not confess, no appeal to either hope or fear to
induce a confession. No confession was suggested or
mentioned; no reference was made to the subject, either
expressly or by implication. If any fear or hope calcu-
lated or having any tendency to prompt a confession
arose in the mind of the accused, it was of his own crea-
tion. An unconditional threat to prosecute for an offence
has no natural tendency to induce a confession, but
rather the contrary; and the hope implied in the offer
of a bribe, the offer being unsolicited, has its origin in
the thoughts of him who makes the offer, and is not
chargeable to him who rejects it. If a man rears a crop
of hope in his own mind from seeds of his own planting,
and under its influence makes a confession, this will not
exclude the confession as evidence. The hope that ex-
cludes is that, and that only, which some other person
kindles or excites. Some inducement must be held out
by another person, tending, according to human nature
and the law of human motives, either to overpower the
will or seduce it, either to coerce through fear, or per-
suade through hope. It seems to us that the right and
only construction to be put on what the witness testified
as to extorting the confession is that this was a conclu-
sion of his own mind drawn from the facts which he
had detailed, the principal fact being that he had threat-

-ened to prosecute. Doubtless he supposed that a threat to prosecute amounted in law to extortion, but in this he was mistaken. Why he was not called upon to explain what he really meant does not appear, and we are unable to conjecture. Had a motion been made to withdraw the confession from the jury, very likely some explanation would have been elicited.

2. There was no lack of evidence to warrant the verdict, but rather a surfeit of evidence.

*Judgment affirmed.*