22438.   SIMS v. BALKCOM, Warden.

ARGUED APRIL 13, 1964—DECIDED MAY 7, 1964.

8

*D. L. Hollowell, Howard Moore, Jr., Horace T. Ward, William H. Alexander, Jack Greenberg, James M. Nabrit,* for plaintiff in error.

*Eugene Cook, Attorney General, Albert Sidney Johnson, Assistant Attorney General, B. Daniel Dubberly, Jr., Deputy Assistant Attorney General, Dewey Hayes, Solicitor General,* contra.

DUCKWORTH, Chief Justice. ■ The writ of habeas corpus is never a substitute for a review to correct mere errors of law. *McKay v. Balkcom,* 203 Ga. 790 (48 SE2d 453), and cases cited therein. It is an available remedy to attack a void judgment. *Fleming v. Lowry,* 173 Ga. 894 (162 SE 144); *Henson v. Scoggins,* 203 Ga. 540 (47 SE2d 643); *Coates v. Balkcom,* 216 Ga. 564 (118 SE2d 376). Therefore, we will not review in this proceeding alleged errors in holding one commitment hearing when the accused was without counsel, although his appointed counsel requested and obtained another commitment hearing at which the accused had counsel. Nor would alleged discrimination in making up the jury boxes in the absence of a timely challenge to the jury be reviewable, *Cornelious v. State,* 193 Ga. 25, 31 (17 SE2d 156), *Williams v. State,* 210 Ga. 665, 667 (82 SE2d 217), remanded 349 U.S. 375 (75 SC 814, 99 LE 1161), adhered to 211 Ga. 763 (88 SE2d 376), cert. denied, 350 U.S. 950 (76 SC 326, 100 LE 828), *Cobb v. State,* 218 Ga. 10 (126 SE2d 231), here or elsewhere, provided the accused was represented by counsel when such challenge must, under the law, be

made. Whether he had such counsel will be decided in Division 3 of this opinion. Thus far we find no error in the judgment remanding the prisoner to the custody of the warden.

■ The sentence of death by electrocution for rape, since the victim was not slain, is alleged to be a violation of the State and Federal Constitutions which forbid cruel and unusual punishment. The 8th Amendment (*Code* § 1-808) of the Federal Constitution and Art. I, Sec. I, Par. IX of our State Constitution (*Code Ann.* § 2-109; Const. of 1945), contain the identical words, "cruel and unusual punishments," and expressly forbid their infliction. We believe this court fairly and correctly construed the meaning of that constitutional provision (*Code* § 1-808) in *Whitten v. State,* 47 Ga. 297, 301. It was there said: "So long as they [the legislature] do not provide cruel and unusual punishments such as disgraced the civilization of former ages, and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the Constitution does not put any limit upon legislative discretion." To the same effect see Wilkerson v. Utah, 99 U.S. 130, 135 (25 LE 345); In Re Kemmler, 136 U.S. 436 (10 SC 930, 34 LE 519); Medley, 134 U.S. 160 (10 SC 384, 33 LE 835); Francis v. Resweber, 329 U.S. 459 (67 SC 374, 91 LE 422).

No determination of this question is either wise or humane if it fails to take full account of the major place in civilized society of woman. She is the mother of the human race, the bedrock of civilization; her purity and virtue are the most priceless attributes of human kind. The infinite instances where she has resisted even unto death the bestial assaults of brutes who were trying to rape her are eloquent and indisputable proof of the inhuman agonies she endures when raped. She has chosen death instead of rape. How can a mere mortal man say the crime of rape upon her was less than death? Man is the only member of the animal family of which we have any knowledge that is bestial enough to forcibly rape a female. Even a dog is too humane to do such an outrageous injury to the female.

We are not dealing with the wisdom of capital punishment in any case. That must be left by the judiciary to the legislative department. But any man, who can never know the haunting

torment of a pure woman after a brutal man has forcibly raped her, who would arbitrarily classify that crime below murder, would reveal a callous appraisal of the true value of woman's virtue.

We reject this attack upon the sentence in full confidence that in so doing we permit the sovereign State, which is actually all the people thereof, to guard and protect the mothers of mankind, the cornerstone of civilized society, and the zenith of God's creation, against a crime more horrible than death, which is the forcible sexual invasion of her body, the temple of her soul, thereby soiling for life her purity, the most precious attribute of all mankind. In such cases the law clothes the accused with full protection of his legal rights to a fair trial with all defenses, including insanity, available to him. His conviction can stand only if he has been lawfully tried, which will include that he is sane and responsible for his acts. An innocent man would want no more, and a guilty man is entitled to no more. So long as the legislature provides the death penalty for any crime, this court will uphold it for forcible rape, as there can be no more reprehensible crime. Accordingly the sentence of death violates neither of the Constitutions as contended.

Since this question follows so closely upon the dissenting opinion of Justices Douglas, Brennan and Goldberg in Rudolph v. Alabama, 375 U.S. 889 (84 SC 155), we deem it necessary to respectfully comment on that dissent. Of course if the majority of that court should rule in accord with that dissent we would promptly follow. But with all due respect to. the dissenting Justices we would question the judicial right of any American judge to construe the American Constitution contrary to its apparent meaning, the American history of the clause, and its construction by American courts, simply because the numerous nations and States have abandoned capital punishment for rape. First we believe the history of no nation will show the high values of woman's virtue and purity that America has shown. We would regret to see the day when this freedom loving country would lower its respect for womanhood or lessen her legal protection for no better reason than that many or even all

other countries have done so. She is entitled to every legal protection of her body, her decency, her purity and her good name. Anyone so depraved as to rape her deserves the most extreme penalty that the law provides for crime.

Nor is the statute (*Code Ann.* § 26-1302; Ga. L. 1866, p. 151; Ga. L. 1960, p. 266), allowing the jury to fix the penalty at life imprisonment or one to twenty years unconstitutional because it furnishes no standard to govern the jury in making its determination of the sentence, as contended. Lawyers experienced in court procedures know that often where guilt is proven mitigating circumstances call for lessening the punishment, and the jury who hears the evidence can better than anyone else properly weigh such matters. For other cases involving cruel and unusual punishments see Weems v. United States, 217 U.S. 349 (30 SC 544, 54 LE 793); O'Neil v. Vermont, 144 U.S. 323, 340 (12 SC 693, 36 LE 450); Howard v. Fleming, 191 U.S. 126, 135 (24 SC 49, 48 LE 121); Trop v. Dulles, 356 U.S. 86 (78 SC 590, 2 LE2d 630); Robinson v. California, 370 U.S. 660, 676 (82 SC 1417, 8 LE2d 758).

■ The final attack is predicated upon the contention that the accused who is admittedly indigent, illiterate and ignorant to the point of incompetency was not furnished legal counsel as is required by the United States Constitution (*Code* § 1-806) and the State Constitution (*Code Ann.* § 2-105; Const. of 1945). We first decide the portion of this attack which is based upon the alleged incompetence or unfaithfulness of the appointed counsel. The attack upon his competency is overwhelmingly refuted by his demanding and securing another commitment hearing, and by his objections to the introduction of an alleged confession of the accused, together with the intelligent manner in which he conducted the trial. The two major criticisms of counsel's incompetency or unfaithfulness are: (1) he did not challenge the jury, and (2) he did not ask a State's witness if the accused was assaulted in the doctor's office. In the absence of more proof than this record contains, no lawyer could find that the jury was subject to challenge, and furthermore, a competent and faithful lawyer might believe it served the best interest of his client, since the jury had wide power to reduce

the sentence, not to challenge. Also it might have been, so far as this record discloses, that counsel knew the State's witness would say no assault had been made upon the accused, which would have been injurious to his client. This case demonstrates the fallacy of allowing a second lawyer, aided by hindsight, to question the wisdom of the lawyer who tried the case where he had to act in the light of circumstances that he knew during the progress of the trial. These attacks upon the trial counsel are groundless and unjustifiably question his competency and honor. See *Williams v. State,* 192 Ga. 247 (15 SE2d 219); *Jones v. Balkcom,* 210 Ga. 262 (79 SE2d 1), cert. denied 347 U.S. 956 (74 SC 682, 98 LE 1101).

But the further portion of this attack is serious. It shows beyond dispute that, from the time the sentence of death was pronounced, this accused was wholly without counsel, and the time in which he could, under the law, file a motion for new trial passed while he was locked in jail, ignorant of his right to appeal, and without the advice of counsel as to his rights. Since his sentence was the extreme limit allowed by law he had all to gain and nothing to lose by making an appeal for a new trial. To say he would not wish for an appeal in these circumstances is to say he was utterly incompetent mentally. It is well established that lack of counsel for indigent persons being tried for crimes is a deprivation of their constitutional rights under the 8th Amendment, supra, and the Georgia Constitution. *Elam v. Rowland,* 194 Ga. 58, 60 (20 SE2d 572); *Smith v. State,* 215 Ga. 362 (110 SE2d 635); *Fair v. Balkcom,* 216 Ga. 721 (119 SE2d 691). Where, as here, the accused had received a sentence of death the most critical period of his case existed from the time of said sentence to its ultimate execution and it is then that the benefit of counsel is most urgently needed. Neither the enormity of his crime nor the conclusiveness of his guilt as shown by the evidence can be given any consideration whatever in connection with the constitutional demands that he have benefit of counsel. We have not found a decided case where the sole complaint of lack of counsel related exclusively to the case after conviction and sentence. But this absence of decisons on the point is no handicap to us, for we know that it would make

a mockery of the Constitutions to have counsel only during the trial and then be denied counsel after the sentence of death. Though the State has made no provision for paying counsel for appeals, and hence the State's constitutional guaranty of counsel, so far as State action is concerned, is empty words, yet this court should and will order as many retrials as necessary to insure counsel as the Constitution requires when in a proper case brought to us this point is presented. The State has thus far depended upon the trial judge to appoint unpaid counsel who have faithfully served at a dead expense to themselves. This practice will satisfy the demand of the Constitution, but it is a rank injustice to the lawyers. But in this case that practice was not followed. The law (*Code Ann.* § 27-3001; Ga. L. 1953, Nov. Sess., p. 478) provides for the appintment of trial counsel and for the county to pay them. Another statute (*Code Ann.* § 27-3002; Ga. L. 1953, Nov. Sess., pp. 478, 479) provides for the appointment and payment of counsel to bring cases to this court, but no funds have ever been appropriated with which to make such payments, and orders of this court to pay have been declined for want of appropriation.

We do not allow our strong disapproval of the lack of counsel after sentence to inferentially censure the appointed trial counsel for his failure to move for a new trial. We think he was utterly mistaken as to his professional duty to protect the right of the accused and move for a new trial, but undoubtedly he thought he was appointed solely to try the case under *Code Ann.* § 27-3001, supra, and that other provisions for appeal counsel should be made by the judge under *Code Ann.* § 27-3002, supra. We would have hoped that he resolve every doubt in favor of his client and his professional obligation as a lawyer. For counsel employed and paid by an accused to fail, after a death sentence, to move for a new trial and seek a review, and abandon the case when no other counsel had been engaged to handle it, would raise a serious question as to his right to remain a member of the Bar. But the case of this appointed counsel can not be tested by that standard even though we think he should have considered it his professional duty to remain in the case.

For the reasons stated in Division 3 of this opinion we hold

that lack of counsel after the death sentence was imposed deprived the accused of his vital constitutional right to counsel and renders his trial and sentence void. The contrary judgment here excepted to is reversed with direction that the accused be given another trial in which he have counsel in conformity with this opinion.

*Judgment reversed with direction. All the Justices concur.*