23439. MASSEY v. THE STATE.

144

Argued April 12, 1966—Decided May 5, 1966.

*Floyd H. Wardlow, Jr., John R. Rogers,* for appellant.

*W. J. Forehand,* Solicitor General, *Arthur K. Bolton,* Attorney General, *Rubye G. Jackson,* Assistant Attorney General, *Hugh Wilson,* for appellee.

Cook, Justice. DeWayne Massey was indicted for the offense of rape at the October term, 1964, of Turner Superior Court. On the trial he was found guilty without a recommendation of mercy. On appeal to this court, the conviction was reversed and a new trial ordered, on the ground that the trial judge failed to comply fully with the rule of sequestration of witnesses. See *Massey v. State,* 220 Ga. 883 (142 SE2d 832).

The defendant was re-indicted for the same offense involving the same victim, as alleged in the first indictment, at the July term, 1965, of Turner Superior Court. Before plea and arraignment, he filed his plea of former jeopardy. The trial judge overruled the plea, and the defendant was again convicted without a recommendation of mercy.

The defendant filed a motion for new trial on the general grounds, which was amended by the addition of four special grounds. Error is assigned in the enumeration of errors on the denial of the motion for new trial, as amended. In his brief the defendant expressly abandons his assignment of error on the overruling of the general grounds of the motion for new trial. Two other assignments of error are made in the enumeration of errors.

■ In his first enumeration of error the defendant contends that the trial judge erred in overruling his timely plea of former jeopardy, on the ground that the second trial was for the same

offense and based upon a second indictment, obtained at a time when the first indictment was still valid and subsisting.

The issue raised by this assignment of error was decided adversely to the defendant's contentions in *Pride v. State*, 125 Ga. 750 (54 SE 688). In the *Pride* case, after citing *Irwin v. State*, 117 Ga. 706 (45 SE 48), it was held: "The rulings quoted virtually control the case at bar. It is true that in *Irwin's* case the record discloses that the case did not proceed further than the filing of the defendant's plea of not guilty, while in the case at bar the record discloses the fact that the defendant filed his plea of not guilty, and that his case was fully submitted to a jury and a verdict was rendered against him and a motion for new trial was granted. The fact that the motion for new trial was made by the defendant defeats the plea of former jeopardy and avoids any distinction between the case at bar and *Irwin's* case, supra. The defendant goes into jeopardy twice, but it is upon his 'own motion,' and this brings the case within the exceptions prescribed by § 11 of the Penal Code [see Constitution, Art. I, Sec. I. Par. VIII; *Code Ann.* § 2-108], where it is provided that 'no person shall be put in jeopardy of life or liberty more than once for the same offense, save on his or her own motion for a new trial, after conviction, and in case of mistrial.' The defendant having sought the opportunity of going into jeopardy the second time for the same offense, it is competent to put him in jeopardy again, but there is no constitutional or statutory requirement that he should in the second instance be tried upon the same indictment. In such case he would stand as if there had been no previous trial or former jeopardy. As ruled in *Irwin's* case, there may be any number of indictments for the same offense, and it would be immaterial on which he was tried."

In the present case the defendant was tried on the second indictment for the same offense as a result of his own efforts, in that the conviction under the first indictment was set aside, and a new trial ordered, based on a motion of the defendant, and he thereby waives the right to plead former jeopardy. See *Sims v. State*, 221 Ga. 190 (4) (144 SE2d 103). There is no merit in the contention of the defendant raised in this assignment of error.

■ It is contended by the defendant in the second enumeration

of error that the trial judge erred in sentencing the defendant to death for rape in a case where the victim survived the attack. It is asserted that this was cruel, unusual, and excessive punishment, and out of proportion to the offense, and that the statute under which the sentence was imposed (*Code* § 26-1302), which makes the death sentence mandatory upon the rendition of a guilty verdict without a recommendation of mercy, violates Art. I, Sec. I, Par. IX of the Constitution of this State (*Code Ann.* § 2-109), and the Eighth Amendment of the Constitution of the United States (*Code* § 1-808).

This contention was decided adversely to the defendant in *Massey v. State*, 220 Ga. 883 (2), supra, in which this court in a full-bench decision held: "We adhere to the ruling in *Sims v. Balkcom*, 220 Ga. 7 (136 SE2d 766), that the statute requiring a death sentence for rape where the jury does not recommend mercy does not violate the constitutional prohibition against cruel and unusual punishments." It is urged by counsel for the defendant that we review these "previous decisions on the point, and reverse them, striking down the death penalty in rape cases where the victim does not lose her life." We have reviewed these decisions and here reaffirm the conclusions therein reached.

■ In special ground 1 of the motion for new trial the defendant complains of the trial judge's failure to charge the provisions of Ga. L. 1952, p. 205 (*Code Ann.* § 27-1503), to the effect that if the jury should believe the defendant's contention that he was insane or mentally incompetent under the law at the time the acts charged against him were committed, they should acquit him and specify in their verdict that the accused was acquitted because of mental irresponsibility or insanity at the time of the commission of the acts charged. In special ground 2 error is assigned because of the trial judge's failure to give the jury any instructions whatever on the general proposition of law that no insane person shall be found guilty of criminal acts charged against him which were committed while in such insane condition.

It is urged by counsel for the defendant that the unsworn statement of the defendant, unsupported by other evidence, constituted a contention that he was insane, or mentally incompetent, at the time of the commission of the alleged offense, within

the meaning of *Code Ann.* § 27-1503; and that this statement required a charge on insanity, even without a request to charge, since this constituted the only defense of the defendant.

In *Davis v. State*, 216 Ga. 110 (114 SE2d 877), where the contention of insanity was sought to be raised solely by the statement of the defendant, this court made no specific ruling as to whether the contention referred to in *Code Ann.* § 27-1503 could be made by the defendant's statement alone, but the court did consider the statement, and make a ruling on its sufficiency to require a charge on the provisions of *Code Ann.* § 27-1503.

The statement of the defendant in the present case was as follows:

"Well, gentlemen of the jury, in my lifetime I have come in contact with dope. And on the morning of October 14, 1964, I was supposed to have went to work but it was raining. So I had gotten dope the week before dat and I took some that morning. And since I didn't have to go to work, I went down to see my mother at the cafe, at Smith's Restaurant and talked to her and went back to the house, and I took some more dope. And then I went over to my aunt's house and knocked and she wasn't at home so I went up to the service station, up there where my brother worked, and then I got in the car with him and went to his wife's house, stayed over there for a while and came back and I got his car, and left and got out on the Seventy-Five Highway going toward Cordele. The last I remember I was about two miles out of Cordele because all the dope had done started working on me. I had done tuck too much. I never tuck that much before. And I don't remember coming back down here through Ashburn on out there where that crime happened.

"I don't deny the crime but I feel that if I had been in my right mind that I would not have did it. I am very sorry that I have hurt the people.

"When I was a kid I always did things on the spur of the moment ever since a shell exploded and hit me in the head and that started me having bad headaches and I had to take shots for it. I just do things that I don't remember doing, things they say I do that I don't remember doing.

"I realize that I committed a bad crime and I am willing to

pay for my crime but I don't feel that I should lose, deserve to lose my life for this crime. In this way I am trying to ask forgiveness of the people in this courtroom and ask the mercy of the court, if it is justice. And, if the jury does not see fit to have mercy upon me, please have mercy for my mother and dad and family.

"I am very sorry that I hurt Mrs. Alberson. And, Mrs. Alberson, I feel that I would not have if I had er been in my right mind. In my lifetime I have never hurt a kid in my life, and I feel that, if I had er been in my right mind, I still wouldn't have hurt him. And that's all I can do—is ask for mercy."

When considered in its full context, the defendant's statement is a fervent confession of the alleged crime, in which he demonstrates that he knows right from wrong when his mental faculties are not incited or overpowered by the effects of an overdose of narcotics. He does not state or indicate that he is a narcotics addict. Taken as a whole, his statement does not suggest that the head injury he received when a child was in any way responsible for his conduct immediately before or during the commission of the crime. He does not say that he does not remember committing the offense because of the head injury, and he in no way indicates that the head injury caused a continuing mental illness such as would excuse him from responsibility. The most that can be said in regard to his mental condition at the time of the commission of the act is that he had a lapse of memory as to the commission of this particular crime, and he believes that he would not have done it if he had been in his right mind. His statement is replete with details as to his every move and maneuver on the morning the alleged crime was committed, until shortly after he took a second shot of "dope," which started having an effect on him before he reached the home of the victim.

"If the condition of a man's mind, when unexcited by liquor, is capable of distinguishing between right and wrong, reasoning and acting rationally, and he voluntarily deprives himself of reason by intoxication, and commits an offense while in that condition, he is criminally responsible for it. 'Nor does it make any difference that a man, either by former injury to the head or brain, or constitutional infirmity, is more liable to be maddened

by liquor than another man. If he has legal memory and discretion when sober, and voluntarily deprives himself of reason, he is responsible for his acts while in that condition . . .' " *Choice v. State,* 31 Ga. 424 (7, 8); *Code* § 26-403.

In the present case the mental condition relied upon by the defendant as the basis for instructions on insanity arose out of an overdose of narcotics, voluntarily injected into his veins before the commission of the crime, and a lapse of memory resulting from a head injury suffered when he was a child. The trial judge charged the jury "that voluntary drunkenness or intoxication from drugs is no excuse for crime, but, if you believe his contentions in this respect, you can consider such intoxication, like any other fact, to illustrate intent and motive and otherwise shed light on the transaction." A similar charge was approved in *Hicks v. State,* 146 Ga. 221 (5) (91 SE 57). See *Dickens v. State,* 137 Ga. 523 (5) (73 SE 826).

The unsworn statement of the defendant did not demand that the trial judge charge the jury *Code Ann.* § 27-1503, or the general principles of law relating to the question of insanity.

■ It is contended by the defendant in ground 3 of the motion for new trial that the trial judge illegally admitted in evidence a butcher knife identified by the victim as the one she used in her efforts to resist the defendant, over the objection that it was irrelevant and immaterial to any issue upon the trial, and would convey an inference to the jury that the knife was to some extent used by the defendant. It is asserted that the admission of the knife served no useful purpose, and that it inflamed the minds and passions of the jurors against the defendant.

"Rape is the carnal knowledge of a female, forcibly and against her will." *Code* § 26-1301. In order to convict an accused of rape it is necessary for the State to prove the carnal knowledge of the victim, and that the act was committed by the use of force and against the will of the victim. The knife, as used and identified by the victim, was evidence in corroboration of her testimony that the carnal knowledge was without her consent and forced upon her. The trial judge specifically and repeatedly instructed the jury that the knife was not used by the defendant. It was not error to admit it in evidence.

150

■ Special ground 4 of the motion for new trial asserts that the trial judge illegally permitted the solicitor general, upon voir dire examination of the jurors, to propound the statutory question, "Are you conscientiously opposed to capital punishment?" It is stated that at least one juror answered this question in the affirmative and was excused. The defendant contends that *Code* § 59-806 (4), upon which the question was based, violates the provisions of Art. I, Sec. I, Pars. II and III of the Constitution of Georgia (*Code Ann.* §§ 2-102, 2-103) and the Fourteenth Amendment to the Constitution of the United States (*Code* § 1-815), which guarantee that no person shall be deprived of life, liberty, or property without due process of law, and guarantee equal protection of law; and also violates the provisions of Art. I, Sec. I. Par. V of the Constitution of the State of Georgia (*Code Ann.* § 2-105) and the Sixth Amendment to the Constitution of the United States (*Code* § 1-806), which guarantee the right to trial by a fair and impartial jury. It is asserted that the systematic exclusion of all persons from the jury who answer such question in the affirmative eliminates those jurors who, though completely impartial on the question of the guilt or innocence of the prisoner, might be disposed to extend mercy and impose a life sentence should they find the defendant guilty, in favor of those jurors who answer such question in the negative, thereby acknowledging in themselves a willingness and predisposition to invoke the death penalty should they find the defendant guilty, with the result that a jury thus selected is prejudiced against the defendant before the trial begins.

It is conceded by counsel for the defendant that this court has held in numerous decisions that a person who declares on voir dire that he has conscientious scruples against the infliction of capital punishment is not competent to serve as a juror in a capital case. *Williams v. State,* 3 Ga. 453; *Monday v. State,* 32 Ga. 672 (2); *Johnson v. State,* 48 Ga. 116 (2); *Bell v. State,* 91 Ga. 15 (16 SE 207); *Mickens v. State,* 149 Ga. 185 (99 SE 779); *Swain v. State,* 162 Ga. 777 (1) (135 SE 187); *Compton v. State,* 179 Ga. 560 (5) (176 SE 764); *Aycock v. State,* 188 Ga. 550 (12) (4 SE2d 221); *Cherry v. State,* 220 Ga. 695 (6) (141 SE2d 412).

In *Woolfolk v. State,* 85 Ga. 69 (9) (11 SE 814), it was held:

"The statute (Code, § 4682 [now § 59-806]) which prescribes the questions to be asked the juror upon his voir dire and declares that when answered as therein prescribed he shall be adjudged a competent juror, does not impair the constitutional right of the defendant to be tried by an impartial jury. The legislature has power to prescribe the manner in which the qualifications of jurors shall be tested, and the manner prescribed in the statute for interrogating the juror and for contesting by evidence the truth of his answers, affords ample test of his impartiality."

The right of an accused to a trial by an impartial jury, guaranteed by the State and Federal Constitutions, means the right to a jury impartial as between the State and the accused on the question of the guilt or innocence of the accused. The crime of rape in this State may be punished by death, and a person accused of such crime has no constitutional right to have jurors trying his case who have conscientious scruples against the infliction of a punishment prescribed by our law.

The statute authorizing the interrogation of a juror in regard to his opposition to capital punishment does not deny a person accused of a capital crime the right to a trial by an impartial jury; neither does it deny him due process of law, or the equal protection of the laws. It was not error for the trial judge to permit the solicitor general to propound and give effect to the statutory question on capital punishment.

*Judgment affirmed. All the Justices concur.*