23923. ABRAMS v. THE STATE.

ARGUED FEBRUARY 13, 1967—DECIDED MARCH 9, 1967—
REHEARING DENIED MARCH 23, 1967.

*Thomas A. Hutcheson, Irwin L. Evans, Casey Thigpen, Howard Moore, Jr.,* for appellant.

*Walter C. McMillan, Jr., Solicitor General, D. E. McMaster, Dan L. Lanier, Solicitor General, Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, Hardaway Young, III,* for appellee.

MOBLEY, Justice. Appellant was indicted, tried, and convicted of rape without recommendation and sentenced to death. From that verdict and judgment he appealed and filed enumeration of errors alleging 22 errors. There is no contention that the verdict is not supported by the evidence, is contrary to the evidence or without evidence to support it. Thus, it is not necessary to relate the facts in the case.

■ Enumerations of error 1 and 2 complain of the admission in evidence without objection of certain incriminating statements made by the defendant. The admission in evidence of the statements without objection was not error. *Taylor v. State,* 220 Ga. 801 (3) (142 SE2d 239). See also *Hill v. State,* 214 Ga. 794 (1) (107 SE2d 662); *Alford v. State,* 137 Ga. 458 (4) (73 SE 375). Appellant relies upon the decision in Henry v. Mississippi, 379 U. S. 443 (85 SC 564, 13 LE2d 408) which states the general proposition that: "A litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights

unless the state's insistence on compliance with its procedural rule serves a legitimate state interest." P. 447. Applying this rule the court stated: "The Mississippi rule requiring contemporaneous objection to the introduction of illegal evidence clearly does serve a legitimate state interest." P. 448. This ruling is directly applicable to our procedural requirement that objection to the admission of incriminating statements made by the accused must be made at the time such evidence is offered; otherwise the accused cannot raise the objection on appeal.

■ Enumerations 4, 5, 6, 7, and 13 complain of the admission in evidence of certain articles taken from appellant's car on the ground that this constituted an unreasonable search and seizure in violation of the 4th and 14th Amendments to the United States Constitution and Art. I, Sec. I, Par. XVI of the Constitution of Georgia and Sec. I, Ga. L. 1966, p. 567 (*Code Ann.* § 27-301).

In our opinion the evidence was admissible under the facts of this case, as the automobile was an instrumentality used in the commission of the crime and was itself admissible in evidence just as would a pistol used to commit a murder be admissible. And just as the cartridges in the pistol, or the spent cartridges found in the gun, would be admissible, so would articles found in the car indicative of the use of the car in the commission of the crime be admissible. In order to demonstrate the soundness of these conclusions we must review the pertinent facts. The lady, the victim of the rape, was returning at night from her place of work in Dublin, Georgia, to her home in Sandersville some forty miles away. She was alone driving a two-door Pontiac with both doors locked. She noticed a car following her closely. As she would speed up, that car would do the same. He blinked his lights bright and then dim, obviously attempting to get her to stop. When she continued at a faster rate of speed, he finally drove up beside her, and struck the left front of her car pushing it into the ditch. The vent window on her side was slightly open, so he forced it open and was in process of opening the door. She jumped out on the other side and ran. He caught her and after a terrific struggle forced her into his car. She bit him severely on his hand and scratched

him about the hands, face and neck. He drove her to an isolated spot, where after further struggle, with him kicking and slugging her and generally beating her up and overpowering her, he raped her.

He drove back to the highway, put her out, and she made her way to the closest house, reaching there in a state of shock and stupor. The matter was reported to Johnson County Sheriff Attaway by telephone. She described the car as being red and white, so a number of officers began searching the countryside for a red and white car. After an hour or so, such a car was found. It was in the vicinity of defendant's house. The officer saw a sign of blood on the outside of the car and one on the inside. He then went to defendant's house and knocked on the door, but got no response. He reported to Sheriff Attaway, who came, knocked on the door, and said open the door. The defendant did, and the officers entered. The sheriff asked defendant where he got the cut on his hand and the visible scratches. He said he got them from briars. The sheriff testified he felt then that he had the right man and told him he was under arrest. The officers brought him, some of his clothes, and the automobile with them to Wrightsville. The crime was committed in the adjoining county, Washington, so the Sheriff of Washington County came to Wrightsville and the officers questioned defendant. He denied his guilt; never made any confession. The sheriff then took the defendant, the articles from the house and the automobile to Sandersville. The car was parked near the jail, and on the second day the officers made a picture of the blood on the outside and inside of the car and cut and removed a patch from the seat cover which had a blood splotch on it, removed a handkerchief which was hanging on the brake, and removed a tire from the car and had a mold made of the tread for comparison with the tire tracks found at the scene of the crime. All of these were admitted over objection that they were the result of an unreasonable and illegal search, since made without a search warrant.

Accepting our original premise that the car was admissible in evidence, as an instrumentality used in the commission of the crime, and it not being practical to produce a car in a court-

room and that the car would have to be held until trial which could be and was several months away, during which time it could deteriorate in value and the evidence of blood, etc., could fade and disappear, it was perfectly proper for the officers to make pictures of the blood stains and a mold of the tire and to preserve the handerkerchief. Everything connected with the car, which would in any way demonstrate the use of defendant's car in the commission of this crime, was admissible without a search warrant. The sheriff had a right under the laws of this state to impound and hold the car and its contents as evidence. The seizure of the car was made contemporaneous with, not remote from, and incidental to the arrest.

It is well established by‛ old as well as recent United States Supreme Court cases that instrumentalities used in the commission of a crime may be seized at the time of the arrest without a search warrant. "The doctrine that a search without warrant may be lawfully conducted if incident to a lawful arrest has long been recognized as consistent with the Fourth Amendment's protection against unreasonable searches and seizures," Ker v. California, 374 U. S. 23, 41 (83 SC 1623, 10 LE2d 726) and cases cited; and, that it is lawful to ". . . seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." Agnello v. U. S., 269 U. S. 20, 30 (46 SC 4, 70 LE 145). See also *Code Ann.* § 27-301 (d) (Ga. L. 1966, p. 567) which authorizes searches and seizures without a warrant in accord with these principles.

In Preston v. U. S., 376 U. S. 364 (84 SC 881, 11 LE2d 777) three men had been seen sitting in a parked car from 10 p.m. until about 3 a.m., which was reported to officers. The officers went out and questioned the men, determined that they were vagrants and arrested them for vagrancy. They took them to jail and then had the car removed to a garage where they, without a search warrant, searched the car and found burglary tools. This evidence was admitted over objection in the trial of their case for conspiracy to commit a robbery. The Supreme Court held the evidence was not admissible as the search and seizure was unreasonable, since not made contemporaneously

with the arrest but at a later time, and made at a place too remote from the place of the arrest. The automobile in the case sub judice was seized at the time of the arrest as an implement used in the commission of the crime of rape. The facts are thus clearly distinguishable from those in the Preston case, supra, as the burglary tools were not instruments used in the commission of the crime of vagrancy for which the accused were arrested. That the nature of the offense for which the accused is arrested has an important bearing upon what objects may be seized as incidental to the arrest is demonstrated in Cooper v. California, U. S. (87 SC—, 17 LE2d 730), (Decided February 20, 1967) where the court distinguished the Preston case because the possession of the car by the police had no relation to the vagrancy charge, while possession of the car in which narcotics were found was directly related to the commission of the crime of unlawfully possessing narcotics in the Cooper case.

In Ker v. California, 374 U. S. 23, supra, where there was a lawful arrest of the defendants in their apartment, the court held a brick of marijuana clearly visible to the officers was admissible in evidence as it was not the result of a search of the house. In this case, the blood stains on the car, the handkerchief and the automobile tire were all clearly visible to the officers and a search was not required. The taking of the pictures only preserved what the officers saw. They could have as well testified to what they saw, but they could also preserve in pictures what was seen by them, and introduce them in lieu of the subjects of the pictures.

Enumerations of error 4, 5, 6, 7, and 13 are without merit.

■ Enumeration 3 complaining of the admission in evidence of testimony of a doctor over appellant's objection to the results of an examination of the nude body of appellant is without merit, as the court sustained appellant's objection to the doctor testifying what scratches or injuries on his body were disclosed by his having the prisoner strip off his clothes. Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908).

■ Enumerations 8, 9, 10, 11 and 12 are considered together as they relate to the admission in evidence over appellant's ob-

jection of a green jacket and a hair found on the jacket, a pair of khaki pants, under shorts, and a shirt, all seized by the officers from his house where he was arrested and in connection with his arrest, without a search warrant. Appellant's contention is that this violated his rights under the 4th, 5th, and 6th Amendments to the United States Constitution; that if the officers had probable cause to arrest they were obligated to warn him of his right to be silent, and no warning was given. A legal search may be made incident to a lawful arrest (Harris v. U. S., 331 U. S. 145 (67 SC 1098, 91 LE 1399) ; see cases cited in Preston v. U. S., supra), or by consent of the owner of the premises or property. The uncontradicted evidence was that the prisoner voluntarily gave them the clothing he was wearing and told them that his shorts and T shirt which he was wearing at the time of the rape were in the water basin. This evidence was procured incidental to the defendant's arrest and voluntarily given by him to the officers. There is no merit in these grounds.

■ Enumeration 14 complains that the court, prior to defendant making an unsworn statement, failed to correctly advise and instruct him as to his right to have the assistance of counsel and to present evidence in his defense in violation of the 6th and 14th Amendments to the United States Constitution and *Code Ann.* § 38-415 (Ga. L. 1962, pp. 133, 134), in that he failed to instruct the defendant that he had a right to testify under oath as a witness in his own behalf. *Code Ann.* § 38-415 provides that the defendant has the right to make an unsworn statement in his behalf and will not be compelled to answer questions on cross examination and that "In the alternative, however, if the prisoner wishes to testify and announces in open court his intention to do so he may so testify in his own behalf." So far as the record shows the prisoner voluntarily took the stand to make an unsworn statement. He did not announce in open court his intention to testify, as required by the statute. He was represented by competent counsel, and we can assume that defendant elected to make an unsworn statement after consultation and upon advice of his counsel. This ground is without merit.

■ Enumeration 15 is not argued and is considered abandoned.

■ Enumeration 16 complains that the court erroneously expressed an opinion and charged the jury incorrectly on the question of whether it could or could not recommend mercy, when he charged: "The granting of it [mercy] in cases of conviction is a mere matter of grace that comes after guilt is established." This charge complained of followed immediately upon the charge that it was within the discretion of the jury whether they recommend mercy, that they may do so with or without reason; that they may do so as a matter of public policy, or out of sympathy for the prisoner or may decline to do so for the same reasons. This ground is clearly without merit. See *Wyatt v. State,* 220 Ga. 867 (142 SE2d 810). Furthermore, the charge was given upon request of appellant. He could not complain of the giving of a charge which he requested.

■ Enumeration 17 excepts to the court's charge on admissions made by defendant and specifically to: ". . . an admission, if any, must have been freely and voluntarily made without any hope of reward or fear of punishment." The statute involved, *Code* § 38-411 reads: "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." The charge is favorable to the appellant rather than harmful, as "any hope of reward or fear of punishment" excludes all hope and all fear and goes beyond the statutory requirement, and the "hope of reward or fear of punishment" which renders an admission or confession inadmissible is that which is induced by another. Fear or hope originating in the party's own mind from seeds of his own planting would not suffice to render the admission inadmissible for it would not meet the requirement that it must have been induced by another. See *Hill v. State,* 148 Ga. 521 (4) (97 SE 442); *Jones v. State,* 18 Ga. App. 310 (1) (89 SE 347); *Bohanan v. State,* 92 Ga. 28 (1) (18 SE 302); *Garrett v. State,* 203 Ga. 756, 767 (4) (48 SE2d 377). Failure to charge that the fear of punishment or hope of reward must be that which is induced by another was favorable to the appellant. This ground is without merit.

■ Enumeration 18 alleges that the court erroneously admitted in evidence incriminating admissions illegally made by defendant without first conducting a hearing outside the presence of the jury to determine the preliminary voluntariness of the admissions as required by the due process and equal protection clauses of the 14th Amendment to the Constitution of the United States. The defendant introduced no evidence but made the following unsworn statement: "Several years ago, I was declared insane and sent to the State Hospital in Milledgeville, where they kept me for almost a year. Then I was released on furlough. Several months ago, they had me up for stealing an automobile and at that time I thought I was talking to some officers in Wrightsville about sending me back to Milledgeville, but they never did do anything. I was carried back to the State Hospital in Milledgeville about three weeks ago, where I was kept until a day or two ago. The doctor at the State Hospital said that I was mentally sick." Doctor Allen, a member of the Medical Staff, who was called by the State as a witness in rebuttal, testified as to the mental condition of the defendant, and in doing so testified, in answer to a question by the solicitor general as to whether he suffered mental lapses, said that defendant couldn't remember very well what happened that night (of the assault) but remembered stopping the lady and a number of details of what happened which he recounted. The doctor testified: "He didn't tell me that he remembered nothing. I asked him if he assaulted this lady and he said no, he didn't." The solicitor general then asked the following question and Dr. Allen gave the following answer: "Is there anything abnormal about that behavior and his failure to remember?" "No, people who commit a crime don't remember the crime, but that is part of their defense, to deny the criminal act." "Is that a conscious failure to remember or a purposeful failure to remember?" "Well, I couldn't tell exactly. Since I heard about what happened, I didn't know anything about that he had actually or was accused of raping this person. I thought he had been accused of kidnapping her and try to rob her and during my interview, he repeatedly stated, one thing that impressed me was that he was trying to rob the lady. I couldn't say whether it was purposeful or not."

There was no objection made by defendant's counsel to the admission of this testimony in evidence, nor any motion made to rule out any incriminating statements, nor request for the court to determine the voluntariness of the statements or to charge the jury thereon. Any hearing on voluntariness of the admission which he might have been entitled to under Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ÅLR2d 1205) was waived by the defendant. The question not having been raised and passed upon in the trial court presents nothing for review by this court.

■ Enumeration 19 alleging that the grand jury which indicted appellant and the traverse jury which tried him were constituted and composed in violation of Section I, Article I of the United States Constitution and Article I, Section III of the Constitution of Georgia because of arbitrary and systematic exclusion of Negroes from the grand and traverse juries of Washington County in the absence of a timely challenge to the jury is not reviewable. *Sims v. Balkcom,* 220 Ga. 7, 9 (1) (136 SE2d 766) and cases cited. There was no challenge to the array or plea in abatement filed by the defendant.

■ Enumeration 20 alleges that the verdict and judgment sentencing appellant to death under *Code Ann.* § 26-1302 are void under the 8th and 14th Amendments to the United States Constitution. This court in *Sims v. Balkcom,* 220 Ga. 7 (2), supra, held that: "The imposition of the penalty of death upon one who rapes a woman is not 'cruel and unusual' punishment which is inhibited by the 8th Amendment (*Code* § 1-808) of the Constitution of the United States. . ."

The contention that the statute, *Code Ann.* § 26-1302, denies equal protection in violation of the 14th Amendment to Negroes because more Negroes have received the death sentence for rape than white persons is obviously without merit. Furthermore, the issue was not raised or tried in the trial court. The constitutionality of the statute cannot be raised for the first time in this court.

■ Enumeration 21 alleging that the verdict and judgment are null and void under the 5th, 6th, 8th, and 14th Amendments of the United States Constitution by reason of submission of ■

the issues of appellant's sanity, voluntariness of alleged incriminating admissions, and presentment to the same jury which tried the issue of appellant's guilt or innocence is without merit. There is nothing in either of the amendments enumerated prohibiting the trial by the jury of the issues submitted to this jury. There was no special plea of insanity; therefore *Code* § 27-1502 requiring a special trial of that issue when special plea is filed is not applicable. The issue of insanity can be raised and tried under the plea of general issue of not guilty. *Carr v. State,* 96 Ga. 284, 286 (22 SE 570); *Hubbard v. State,* 197 Ga. 77 (2) (28 SE2d 115). Thus it was proper for the court to permit trial of the issue of insanity and to charge thereon. The question of voluntariness of admissions was a question for consideration and decision by the jury, and it was proper for the trial judge to charge thereon. There is nothing to the contrary in Jackson v. Denno, 378 U. S. 368, supra, relied upon by appellant. The multiple issues of insanity, voluntariness of the admissions, and fixing of punishment were properly before the jury, and trial and determination of same in one trial violated none of appellant's constitutional rights.

Enumeration 22 alleging that exclusion under *Code* § 59-806 (4) of persons conscientiously opposed to capital punishment is a denial of rights under the 5th, 8th, and 14th Amendments of the United States Constitution, is answered by this Court in *Massey v. State,* 222 Ga. 143, 151 (149 SE2d 118) where it was held: "The statute authorizing the interrogation of a juror in regard to his opposition to capital punishment does not deny a person accused of a capital crime the right to a trial by an impartial jury; neither does it deny him due process of law, or the equal protection of the laws. It was not error for the trial judge to permit the solicitor general to propound and give effect to the statutory question on capital punishment."

*Judgment affirmed. All the Justices concur.*