24743. MILLER v. THE STATE.

628

Argued July 8, 1968—Decided September 24, 1968—
Rehearing denied October 10, 1968.

John H. Ruffin, Jr., Thomas M. Jackson, for appellant.

George D. Lawrence, Solicitor General, Arthur K. Bolton, Attorney General, Marion O. Gordon, Courtney Wilder Stanton, Assistant Attorneys General, for appellee.

ALMAND, Presiding Justice. William Jack Miller was arrested on June 18, 1966, under a warrant charging him with rape alleged to have been committed on June 17, 1966. Defendant was carried before a justice of the peace on June 20, 1966, at which time he was bound over to the grand jury of Jones County which subsequently returned an indictment at the October 1966 term charging the defendant with rape of a named female. The defendant filed a motion to quash the indictment on the ground of alleged systematic exclusion of Negroes from the grand jury that returned the indictment. After two hearings on the matter, this motion to quash was overruled. On November 1, 1966, the

defendant filed a special plea of being presently insane and requested a sanity examination. Pursuant to an order of the trial court the defendant was taken to the Milledgeville State Hospital where he was kept for approximately three months and examined by physicians. By consent of counsel for the State and the defendant, the special plea of insanity was heard by the trial court to pass upon all issues of law and fact. After an extensive hearing the trial court on November 1, 1966, held that under the evidence the defendant was presently mentally capable of standing trial and denied defendant's special plea of insanity. On February 20, 1967, defendant filed a supplementary motion to quash the indictment which was overruled. On the same day the trial court overruled the defendant's plea in abatement challenging the legal composition of the grand and petit juries of Jones County.

On the trial the jury returned a verdict of guilty without a recommendation of mercy, and the defendant was sentenced to death. His motion for a new trial upon the general and special grounds was overruled on April 29, 1968. He appeals and enumerates 20 grounds of alleged error.

■ ■ It is contended that the indictment should have been quashed because of the failure to give the defendant a committal hearing and because he was deprived of his right to have counsel at such hearing. The evidence does not support this contention. It shows that the defendant within 24 hours after his arrest was taken before a justice of the peace where he was advised by the committing magistrate of his right to counsel. Whereupon the defendant replied that he did not want a lawyer and that "I'm guilty, and I don't know why I done it."

There was evidence that a hearing was had, and the order of the magistrate recites, "after hearing the evidence in the within case I hereby bind William J. Miller to the grand jury for rape."

■ The failure of the committing magistrate to cause an abstract of all the evidence to be made and filed with the superior court does not render the commitment or indictment void.

"In regard to the second attack made in the present case on the judgment committing the defendant to jail, while, under the

*Code* §§ 27-405, 27-406, it was the absolute duty of the justice in such case to 'cause an abstract of all the evidence to be made' and return the same to the superior court, it can not be said that the failure of the justice to comply with the duty thus imposed upon him so vitiates the hearing and commitment as to render them absolutely void. . . His failure to comply with this requirement does not affect his jurisdiction, or strip him of his power and authority to render a judgment of commitment in such case." *Harris v. Norris,* 188 Ga. 610, 612 (4 SE2d 840).

■ In his motion to quash and abate the indictment, the defendant charged that the grand jury which indicted him was illegally constituted in that Negroes were systematically excluded in violation of the due process clauses of the State and Federal Constitutions. The record discloses that subsequent to his commitment and before his indictment, the defendant was represented by counsel of his own choice. The defendant was clearly afforded an opportunity to exercise his right to challenge the composition of the grand jury before he was indicted and his failure to do so before the return of the indictment constituted a waiver of his right to object to the grand jury array. *Blevins v. State,* 220 Ga. 720 (3) (141 SE2d 426). See Reece v. Georgia, 350 U. S. 85 (76 SC 167, 100 LE 77). This ground of attack is without substance.

■ The indictment charged the defendant with committing the offense on the 17th day of June, 1966. The defendant attacked the validity of the indictment because it did not state the exact time of day the offense was committed. This enumeration of error is without merit. See *Code* § 27-701. *Thomas v. State,* 71 Ga. 44 (4).

■ In his supplemental motion to quash the indictment, the defendant alleged that *Code Ann.* § 26-1302 (Ga. L. 1960, p. 266) violates the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution because (a) the "defendant, a Negro, who is charged with the crime of rape allegedly perpetrated upon a white woman in the State of Georgia, if convicted on this charge may be sentenced pursuant to *Code Ann.* § 26-1302 to death. This sentence, if imposed

violates defendant's rights under the equal protection clause of the Fourteenth Amendment to the Constitution of the United States in that there exists now, and has existed for a long time past, in the State of Georgia, a discriminatory pattern, practice, custom and usage on the part of the official organs and instrumentalities of the State of Georgia including juries, whereby the death penalty for the crime of rape is consistently, systematically and discriminatorily imposed upon Negro defendants charged with raping white women while the death penalty is not imposed in this systematic fashion against other rape defendants," (b) the jury which will try the defendant and render the verdict against him has unlimited, undirected and unreviewable discretion in the choice of sentence, (c) said statute permits the same jury which tries the issue of guilt or innocence to also fix punishment and does not provide for separate consideration of the issue of guilt or innocence, and the question of punishment to be imposed, and (d) the provisions of said statute as to imposing the death penalty on one convicted for rape constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Federal Constitution.

As to ground (a) above, there was no evidence to support the charge as set out that there exists a discriminatory pattern whereby the death penalty is consistently imposed upon Negro defendants convicted of raping white women. Further, the statute in question does not violate the due process or equal protection clauses of the Fourteenth Amendment to the Federal Constitution, nor does it violate the Eighth Amendment to the Federal Constitution. "The statutes of this State authorizing capital punishment and providing that juries in capital cases may recommend mercy, which has the effect of reducing punishment to life imprisonment in the discretion of the jury, are not vague and uncertain although they fix no standards for recommending mercy, and no violation of the Sixth and Fourteenth Amendment of the United States Constitution as far as Negroes convicted of crime has been shown. Nor does a death penalty amount to cruel and unusual punishment forbidden by the Federal Constitution. None of the alleged errors attacking the constitutionality of these statutes or their application is mer-

itorious." *Manor v. State*, 223 Ga. 594 (18) (157 SE2d 431). See *Abrams v. State*, 223 Ga. 216 (11) (154 SE2d 443).

■ Enumeration of error No. 14 charges that the trial court erred in overruling the defendant's special plea of insanity.

The evidence adduced on the hearing of this plea discloses that the defendant in November of 1966 was taken to the Milledgeville State Hospital where he remained until about February of 1967 and that during this time he was examined by physicians, psychiatrists and a psychologist intern. The weight of the testimony of the medical opinion was that the defendant was sane and capable of understanding the proceedings against him. The order of the trial court denying the plea was supported by the evidence.

■ *Order overruling motion for a new trial.* Amended grounds 1, 2, 3, 6, 7, 8, 9, 10 and 12 assert that the trial court erred in denying the two motions to quash the indictment, the plea in abatement and the special plea of insanity. We have disposed of these rulings adversely to the contentions of the defendant and will not repeat them here.

Amended ground No. 11 complains that the trial court erred in not sustaining the defendant's motion for a mistrial where the solicitor general in his argument to the jury said the defendant acted like a beast. The trial court instructed the jury to take no consideration of the solicitor general's remarks and "eliminate them from your mind." No error is shown in this ground.

As to the general grounds, a review of all the evidence discloses that the verdict of the jury finding the defendant guilty is fully supported by the evidence.

■ In his motion challenging the composition of the traverse jury, the defendant charged that members of the Negro race were systematically, arbitrarily and deliberately excluded from service on the present panel of traverse jurors now "put upon the defendant" in violation of his rights as provided under the due process and equal protection clauses of the Georgia and Federal Constitutions.

After a lengthy hearing on this challenge to the array of the traverse jurors, the trial court denied the motion saying: "Giving consideration to the evidence and to the arguments of counsel,

I reach the conclusion and so hold that the jury commissioners of Jones County, Georgia, in revising and making up the jury lists from which the traverse jurors and grand jurors are selected, and from which the grand jury in this particular case has been selected, performed their duties faithfully and diligently, and that they exerted every effort to follow the law and to be fair to all without regard to race or color, and that in making such revision, considered all prospective jurors without regard to race or creed, and I do not find that there has been any arbitrary exclusion in the composition or compilation of the 1966 jury list, and I think it complies with both the State and Federal laws, and I so find."

The evidence on whether or not the jury was properly composed may be summarized as follows: The traverse jury list was made by the jury commission from the 1966 revision. The names were taken from the 1965 tax digest of Jones County. The tax digests from which the jury list was made were not classified as to white or colored taxpayers. The names were chosen in alphabetical order from the tax digest. All of the jury commissioners went through the 1965 tax digest taking each name from "A" to "Z." The jury list was made up by the commissioners without regard to race or color. The criteria used in judging the standards for jury service were the same for white and Negro persons. When the list was compiled, the commissioners did not know the total number of either whites or Negroes who were placed on the traverse jury list. The total number of taxpayers on the 1965 tax digest was 3,601. The tax collector was unable to give an estimate of what portion of the tax digest was made up of Negro taxpayers. The racial breakdowns of the 1966 revised grand and traverse jury list were not proven.

The defendant failed to make a *prima facie* case of systematic exclusion of Negroes from the 1966 jury revision list. It was not error to overrule the motion to quash the indictment and the plea in abatement.

■ In the selection of the jury, two members of the panel of jurors stated that they were conscientiously opposed to capital punishment. Over the objection of counsel, these two jurors

were excused by the trial court "for cause." Counsel upon selection of the panel to try the defendant challenged the entire panel on the "ground that the jurors placed upon him are limited only to those persons who are not opposed to capital punishment which is a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution." This motion was overruled. Ground 8 enumerates error on this ruling.

*Code* § 59-806 (4) provides: "On trials for felonies any juror may be put upon his voir dire and the following questions shall be propounded to him, viz.: . . . (4) 'Are you conscientiously opposed to capital punishment?' If he shall answer this question in the negative, he shall be held a competent juror." This court has held that if the juror answered this question affirmatively, he was incompetent to serve as a juror. *Massey v. State,* 222 Ga. 143 (5) (149 SE2d 118); *Mickens v. State,* 149 Ga. 185 (1) (99 SE 779). The ruling of the trial court was correct at the time it was made. *Code* §§ 59-806 (4) and 59-807; *Abrams v. State,* 223 Ga. 216 (13), supra; *Clarke v. Grimes,* 223 Ga. 461 (4) (156 SE2d 91). The judge also had the right to rely upon Logan v. United States, 144 U. S. 263 (12 SC 617, 36 LE 429), a case where the defendant was indicted for a crime punishable by death in which the Supreme Court of the United States held that those jurors who stated on voir dire that they had conscientious scruples in regard to the infliction of the death penalty were rightly permitted to be challenged by the government for cause. However, since the ruling of the trial court in the instant case in February of 1967, the Supreme Court of the United States has ruled that excusing for cause jurors who are conscientiously opposed to capital punishment is error. Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (decided June 3, 1968). It was there held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected. . . To

execute this death sentence would deprive him of his life without due process of law." Pp. 522, 523. The court ruled that it was not prepared to "announce a *per se* constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was." P. 518. The conviction in that case was allowed to stand but the death sentence was set aside.

In Footnote 22 to the opinion, the Supreme Court of the United States said: "We have considered the suggestion, advanced in an *amicus curiae* brief filed by 24 States on behalf of Illinois, that we should 'give prospective application only to any new constitutional ruling in this area,' particularly since a dictum in an 1892 decision of this Court approved the practice of challenging for cause those jurors who expressed 'conscientious scruples in regard to the infliction of the death penalty for crime.' Logan v. United States, 144 U. S. 263, 298 [12 SC 617, 36 LE 429]. But we think it clear, Logan notwithstanding, that the jury-selection standards employed here necessarily undermined 'the very integrity of the . . . process' that decided the petitioner's fate, see Linkletter v. Walker, 381 U. S. 618, 639 [85 SC 1731, 14 LE2d 601], and we have concluded that neither the reliance of law enforcement officials, cf. Tehan v. Shott, 382 U. S. 406, 417 [86 SC 459, 15 LE2d 453]; Johnson v. New Jersey, 384 U. S. 719, 731 [86 SC 1772, 16 LE2d 882], nor the impact of a retroactive holding on the administration of justice, cf. Stovall v. Denno, 388 U. S. 293, 300 [87 SC 1967, 18 LE2d 1199], warrants a decision against the fully retroactive application of the holding we announce today."

The crime of rape shall be punished by death, unless the jury recommends mercy, in which event the punishment shall be life imprisonment, provided however, the jury may fix the punishment of imprisonment for not less than one year nor more than 20 years. *Code Ann.* § 26-1302 (Ga. L. 1960, p. 266); *Code Ann.* § 27-2302 (Ga. L. 1963, pp. 122, 123). This law makes no provision for punishment other than death where the jury finds the defendant guilty of rape, unless the jury recommends mercy. Without a recommendation of mercy, the court has no authority to enter a sentence other than death. Compare *Carter v. State,* 204 Ga. 242 (49 SE2d 492).

636

Under the ruling in the Witherspoon case, supra, the sentence of death in the instant case is illegal. Yet, under the provisions of *Code* § 6-1610, this court has the power "to award such order and direction to the cause in the court below as may be consistent with the law and justice of the case." Accordingly, the verdict and judgment of conviction for rape are affirmed. The sentence imposed on the verdict is reversed with direction that the trial court impanel a jury selected as in a capital case for the submission to it of the sole question: Should the defendant be recommended to mercy and sentenced according to *Code Ann.* § 26-1302 (Ga. L. 1960, p. 266)? In the selection of the jury for such trial, no member of the jury panel shall be excused for cause solely because of his being opposed to capital punishment. However, the State will have the right to challenge for cause any prospective juror who states that his reservations about capital punishment would prevent him from making an impartial decision as to a defendant's guilt of rape. Furthermore, the State is not prevented from asserting the right to exclude from the jury any juror who states that he could never vote to impose the death penalty or that he would refuse even to consider its imposition in the case before him.

*Judgment affirmed in part; reversed in part with direction. All the Justices concur.*