Peterson, J., concurring.
I am skeptical that our analytical approach to the Cruel and Unusual Punishment Clause of the Georgia Constitution is consistent with the original public meaning of that Clause. But because even under that approach the grant of habeas corpus must be reversed, it is not necessary to reconsider that approach here. Accordingly, I concur in the opinion of the majority.
*141 "[W]e should not simply recite holdings of the United States Supreme Court regarding [a provision of the United States Constitution] and uncritically import them into our interpretation of [a parallel provision] of the Georgia Constitution." Elliott v. State, --- Ga. ----, ---- (II) (C), 824 S.E.2d 265, 2019 WL 654178, *6 (II) (C), 2019 Ga. LEXIS 112, at *17 (II) (C) (Case No. S18A1204, decided Feb. 18, 2019). But for the last several decades, we have done precisely that in our application of Georgia's Cruel and Unusual Punishment Clause. Instead, we should interpret the Clause according to its original public meaning, informed by its text, context, and history. Id. at ---- (II) (C), 824 S.E.2d 265, 2019 WL 654178, *---- (II) (C), 2019 Ga. LEXIS 112, *16-*17 (II) (C) ; see also Maxim Cabaret, Inc. v. City of Sandy Springs, 304 Ga. 187, 195-196, 816 S.E.2d 31 (2018) (Peterson, J., concurring) (expressing doubt regarding our construction of Georgia's Free Speech Clause as identical with the First Amendment to the United States Constitution "without any consideration of the text, context, or history" of the Georgia clause); Diversified Holdings, LLP v. City of Suwanee, 302 Ga. 597, 615, 807 S.E.2d 876 (2017) (Peterson, J., concurring) (noting that the textual difference between the Takings Clause of the Fifth Amendment to the United States Constitution and the Just Compensation Clause of the Georgia Constitution "seems to me significant enough to raise questions about the validity of our case law often interpreting the Clauses as essentially the same").
The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Am. VIII. The relevant provision of Georgia's Constitution reads identically: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted ...." Ga. Const. of 1983, Art. I, Sec. I, Par. XVII. This provision has been word-for-word identical through every Georgia Constitution since 1861. See Ga. Const. of 1861, Art. I, Sec. XIV;[1] Ga. Const. of 1865, Art. I, Sec. XI; Ga. Const. of 1868, Art. I, Sec. 16; Ga. Const. of 1877, Art. I, Sec. I, Par. IX ; Ga. Const. of 1945, Art. I, Sec. I, Par. IX ; Ga. Const. of 1976, Art. I, Sec. I, Par. XIV.[2] And because "we generally presume that a constitutional provision retained from a previous constitution without material change has retained the original public meaning that provision had at the time it first entered a Georgia Constitution, absent some indication to the contrary[,]" Elliott, --- Ga. ---- (II) (A), 824 S.E.2d 265, 2019 WL 654178, *3 (II) (A), 2019 Ga. LEXIS 112, at *7 (II) (A), interpretation of this provision requires consideration of its meaning in 1861.
Shortly after the Georgia provision's adoption, we explained the meaning of the prohibition on cruel and unusual punishment: "so long as [the General Assembly does] not provide cruel and unusual punishments, such as disgraced the civilization of former ages, and make one shudder with horror to read of them, as drawing, quartering, burning, etc., the Constitution does not put any limit upon legislative discretion." Whitten v. State, 47 Ga. 297, 301 (1872). We strongly endorsed this history-bound construction as to both the federal and state constitutions as late as the early 1970s. See, e.g., Evans v. State, 228 Ga. 867, 872 (5) (b), 188 S.E.2d 861 (1972) ; Dutton v. Smart, 222 Ga. 35, 36-37 (2), 148 S.E.2d 396 (1966) ; Sims v. Balkcom, 220 Ga. 7, 10 (2), 136 S.E.2d 766 (1964). And we expressly viewed this construction as incompatible with what would become the United *142 States Supreme Court's "evolving standards of decency" analysis. See Sims, 220 Ga. at 11, 136 S.E.2d 766 ("we would question the judicial right of any American judge to construe the American Constitution contrary to its apparent meaning, the American history of the clause, and its construction by American courts, simply because the numerous nations and States have abandoned capital punishment for rape") (citing with criticism Rudolph v. Alabama, 375 U.S. 889, 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (1963) (Goldberg, J., dissenting from denial of certiorari)).
But then the United States Supreme Court's dramatic shift in interpretation of the Eighth Amendment during the 1970s - including the invalidation of Georgia's death penalty - knocked us off course. And by the late 1980s, we had reversed course entirely. In Fleming v. Zant, we quoted Whitten but omitted the history-bound language that cabined its meaning: "[T]he constitutional standard reflects society's view of what punishments are cruel, and prohibits those that 'disgraced the civilizations of former ages, ... mak[ing] one shudder with horror to read them.' " Fleming v. Zant, 259 Ga. 687, 689 (3), 386 S.E.2d 339 (1989). And then, in the very next sentence, we flatly ignored the history and context of the Georgia Constitution, as well as over 100 years of Georgia precedent: "In other words, whether a particular punishment is cruel and unusual is not a static concept, but instead changes in recognition of the 'evolving standards of decency that mark the progress of a maturing society.' " Id. (quoting, inter alia, Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion)).
Ever since, we have applied the United States Supreme Court's "evolving standards of decency" analysis to decide questions under the Georgia Constitution. It seems to me quite likely that such an approach cannot be squared with the original public meaning of the Georgia Constitution, and if it cannot, we should reconsider our approach in the proper case.

The only difference between these provisions was that the 1861 provision separated its clauses by semicolons instead of commas.

Georgia's first Constitution, the Constitution of 1777, also prohibited excessive fines and bail, but did not specifically prohibit cruel and unusual punishment. See Ga. Const. of 1777, Art. LIX ("Excessive fines shall not be levied, nor excessive bail demanded."). No such provision appeared in the Constitutions of 1789 or 1798. And over time, whipping and banishment were also singled out as prohibited as criminal punishment. See Ga. Const. of 1868, Art. I., Sec. XXII ("Whipping, as a punishment for crime, is prohibited); Ga. Const. of 1877, Art. I, Sec. I, Par. VII ("Neither banishment beyond the limits of the State, nor whipping, as a punishment for crime, shall be allowed."); Ga. Const. of 1945, Art. I, Sec. I, Par. VII (same); Ga. Const. of 1976, Art. I, Sec. I, Par. XVIII (same); Ga. Const. of 1983, Art. I, Sec. I, Par. XXI (materially the same).